# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| NOE SANCHEZ, JR. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-492 |
| | § | (4:18-CR-125(1)) |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *pro se* Movant Noe Sanchez, Jr.'s motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255, in which he asserts constitutional violations concerning his Eastern District of Texas, Sherman Division conviction and sentence. After reviewing the case, the Court concludes that Movant's § 2255 motion should be denied.

## I. BACKGROUND

On August 8, 2018, Movant was indicted on one count of Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine in violation of 21 U.S.C. § 846.[1] Crim. ECF (Dkt. #1). The Federal Public Defender was appointed to represent Movant on November 5, 2018. Crim ECF. (Dkt. #8). Movant was originally represented by Assistant Federal Public Defender Robert Arrambide ("Arrambide"). On April 25, 2019, Movant pleaded guilty to Count One of the Indictment. Crim. ECF (Dkt. #22 & #44). The Plea Agreement outlined the following Guideline Stipulations:

 a.   The amount involved during the term of the conspiracy involved 45 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine or 4.5 kilograms or more of methamphetamine (actual). This amount was involved in the conspiracy after the defendant entered the

---

[1] When referencing the habeas docket, the court will refer to docket entries as Dkt. #___. When referencing the criminal docket, the court will refer to docket entries as Crim. ECF (Dkt. #___).

conspiracy, was reasonably foreseeable to the defendant, and was part of jointly undertaken activity resulting in a base offense level pursuant to U.S.S.G. § 2D1.1 of 38.

b.     A reduction of three levels for acceptance of responsibility under U.S.S.G. § 3E1.1 applies; however, this stipulation is subject to recommendation of the United States Probation Office. **If circumstances indicating that the defendant has not accepted responsibility become known after execution of this Agreement, this stipulation is void and the defendant may object to the failure of the Presentence Report to recommend the reduction. The government's request to decrease the offense level by <u>one</u> level in accordance with U.S.S.G. § 3El.l(b) is contingent on the defendant demonstrating acceptance of responsibility for the offense conduct and cooperating fully in recovering restitution for all relevant conduct**.

Crim. ECF (Dkt. #24 at 3).  Movant also waived his right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds and agreed further to not contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding including, but not limited to, a proceeding under 28 U.S.C. § 2255. *Id* at 5.  Movant did reserve the right to appeal any punishment imposed in excess of the statutory maximum and reserved the right to appeal or seek collateral review of claims of ineffective assistance of counsel.

*Id.*  Movant also signed a Factual Basis on the same day, stating the following:

3.     That [Movant] and one or more persons in some way or manner made an agreement to commit the crime charged in Count One of the Indictment, to knowingly and intentionally possess with the intent to manufacture and distribute 45 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine or 4.5 kilograms or more of methamphetamine (actual).

4.     That [Movant] knew the unlawful purpose of the agreement and joined in it with the intent to further it.

5.     That [Movant] knew that the amount involved during the term of the conspiracy involved 45 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine or 4.5 kilograms or

2

more of methamphetamine (actual).  This amount was involved in the conspiracy after the defendant entered the conspiracy, was reasonably foreseeable to the defendant, and was part of jointly undertaken activity.

6.   That [Movant's] role in this conspiracy was to supply co-conspirators with kilogram quantities of methamphetamine from various sources, which was imported from Mexico, which would then be distributed to other co-conspirators and co-defendants during the term of the conspiracy in the Eastern and Northern Districts of Texas.

Crim. ECF (Dkt. #26 at 1-2).

Former Magistrate Judge Kimberly Priest Johnson entered Findings of Fact and Recommendation on Guilty Plea on April 26, 2019.  Crim. ECF (Dkt. #27).  The Court adopted those findings on May 15, 2019.  Crim. ECF (Dkt. #28).  On June 18, 2019, Assistant Federal Public Defender Brian O'Shea ("O'Shea") was substituted in as counsel of record for Movant.  Crim ECF (Dkt. #29).  Movant was sentenced on September 18, 2019, to 327 months' imprisonment with a term of five years supervised release to follow.  Crim. ECF (Dkt. #38 & #45).  Judgment was entered the following day.  Crim. ECF (Dkt. #39).  Movant filed a Notice of Appeal on September 23, 2019.  Crim. ECF (Dkt. #41).  On May 5, 2021, the Fifth Circuit Court of Appeals dismissed the appeal as frivolous.  Crim. ECF (Dkt. #49).[2]  These habeas proceedings followed.

By way of his motion to vacate, set aside, or correct sentence filed June 29, 2021, Movant asserts the following points of error:

1.   Arrambide's failure to conduct an investigation into Movant's competency resulted in Movant entering and unknowing and involuntary plea;

---

[2] O'Shea filed an *Anders* Brief to which Movant filed a response. *Id.*; *see also Anders v. California*, 386 U.S. 738 (1967).  The Fifth Circuit found that the record was not sufficiently developed to consider Movant's claims of ineffective assistance of counsel and declined to consider them without prejudice to collateral review, concurring that the appeal failed to present any nonfrivolous issues for appellate review. *Id.*

2.      Arrambide never explained Movant's offense during the pre-plea period; his advice was to "just sign the plea agreement and you will get between 11 and 14 years or if you go to trial you will lose and get 30 years;"

3.      O'Shea gave incorrect advice regarding the availability of a reduced sentence with respect to debriefing; and

4.      O'Shea failed to raise the issue of Movant's competency during sentencing, failed to present mitigating evidence at sentencing, and failed to file an appeal on the issue of competency as requested, instead filing an *Anders* Brief.

Motion to Vacate, Set Aside, or Correct Sentence (Dkt. #1).  Movant attaches his affidavit asserting: (1) Movant told both of his attorneys that he was under a doctor's care for mental illness and was taking medication and both attorneys failed to conduct an investigation into his competency to ensure he could understand the court proceedings and "intelligently" plead guilty and understand the consequences and (2) Arrambide "misadvise [sic] me of my sentencing exposure, he told me if I plea [sic] guilty my guidelines range will be 11 to 14 years, which turn [sic] out not to be true.  If I would have known my correct guideline I would not have plead guilty but would have went to trial." (Dkt. #1-3).

On March 31, 2023, Movant filed a Motion to Expand the Record (Dkt. #7) and a Motion to Supplement Pleadings (Dkt. #9).  Magistrate Judge Priest Johnson entered an Order on April 6, 2023, granting the motion to expand the record, which includes Movant's medical records from Border Regional Behavioral Health Center, but denying Movant's motion to supplement the pleadings (Dkt. #10).[3]

The Government was ordered to Show Cause (Dkt. #11) and filed a Response on May 11, 2023 (Dkt. #13).  The Government argues that Movant's plea was knowing and voluntary and that

---

[3] The medical records are sealed (Dkt. #8).

Movant's claims of ineffective assistance of trial and appellate counsel lack merit.

Movant filed his Reply on June 2, 2023 (Dkt. #14).  Movant complains that the Government did not provide an affidavit from his trial counsel explaining his representation.  *Id*. at 1.  Movant states that counsel should have investigated his mental-health issues, which would include an independent mental-health evaluation, and advised him to plead guilty as his sentencing exposure was 11-14 years, and that "if he don't accept the plea agreement and go to trial he will get 30 years." *Id*. at 1-2. Movant argues his allegations warrant an evidentiary hearing as the plea colloquy is insufficient alone, especially given that trial counsel allegedly "coach[ed] [Movant] before his plea hearing on what to say and answer."  *Id*. at 2.

This motion to vacate, set aside or correct sentence is now ripe for review.

## II. STANDARD OF REVIEW

The first paragraph of 28 U.S.C. § 2255 sets out the claims which are cognizable under the statute.  These are: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack.

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted.  *United States v. Frady*, 456 U.S. 152, 164-65 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991).  A defendant can challenge his conviction or sentence after it is presumed final on issues of constitutional or jurisdictional magnitude only, and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the

5

errors. *Shaid*, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors. It is reserved for transgression of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1995). Further, if issues "are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978)).

### III. ANALYSIS

In order to establish ineffective assistance of counsel, Movant must prove counsel's performance was deficient, and the deficient performance prejudiced Movant's defense. *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984). Because Movant must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. As a result, there is a strong presumption that counsel rendered reasonable, professional assistance, and that the challenged conduct was the result of a reasoned trial strategy. *Id.; United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009). To overcome the presumption that counsel provided reasonably effective assistance, Movant must prove his attorney's performance was objectively unreasonable

6

in light of the facts of the movant's case, viewed as of the time of the attorney's conduct. *Strickland*, 466 U.S. at 689-90; *Fields*, 565 F.3d at 294.

In addition to proving counsel's performance was deficient, Movant is required to show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Mere allegations of prejudice are insufficient; the movant must affirmatively prove, by a preponderance of the evidence, that he was prejudiced as a result of counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant. "This includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea[.]" *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (internal and concluding citations omitted). This includes claims regarding a failure to investigate or a failure to challenge police misconduct. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). In the context of a guilty plea, a defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The court must determine that the plea represents "a voluntary choice among the alternative courses of actions open to the defendant." *Id.* 474 U.S. at 56. "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."

*Lee v. United States*, 582 U.S. 357, 369 (2017).  Additionally, the Supreme Court has determined that "the representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  "If a defendant understands the charges against him, understands the consequences of his guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (en banc).

Whether the representation was deficient is determined as measured against an objective standard of reasonableness. *See Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).  "There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Woodward v. Epps*, 580 F.3d 318, 329 (5th Cir. 2009) (quoting *Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989)).

**A.   Knowing and Voluntary Plea**

Movant directly challenges the effectiveness of trial counsel as it relates to the knowing and voluntary nature of his plea.  A review of the complete record here on habeas review, however, demonstrates that the plea was knowing and voluntary.  Movant and Arrambide both signed the Plea Agreement on March 18, 2019.  Crim. ECF (Dkt. #24).  The Sealed Addendum to the Plea

8

Agreement and Factual Basis were signed the same day.  Crim. ECF (Dkt. #25 & #26).  The

transcript of the plea hearing held October 11, 2019,  reflects that Magistrate Judge Priest Johnson

specifically probed Movant on his history of mental illness:

| | |
|---|---|
| THE COURT: | Have you ever been diagnosed with any mental illness or problem? |
| DEFENDANT SANCHEZ: | I have. |
| THE COURT: | Okay.  Tell me about that. |
| DEFENDANT SANCHEZ: | Bipolar, depression, anxiety, and schizoaffective. |
| THE COURT: | Do you know the general timeframe when you received those diagnoses? |
| DEFENDANT SANCHEZ: | I've been diagnosed, and I'm still taking medication for them. |
| THE COURT: | Okay.  So you're seen by a doctor? |
| DEFENDANT SANCHEZ: | Yes. |
| THE COURT: | Do you know what medications you're taking? |
| DEFENDANT SANCHEZ: | They call them Buspars, Seroquel, and some other.  I take like seven – |
| THE COURT: | Okay. |
| DEFENDANT SANCHEZ: | – seven in the morning and eight at night. |
| THE COURT: | Okay.   And have you had your medication this morning? |
| DEFENDANT SANCHEZ: | No. |
| THE COURT: | No.   Okay.   Do you need your medication to understand or – I primarily need to know if you understand what you're doing here today. |

DEFENDANT SANCHEZ: Yes.

THE COURT:              You do?

DEFENDANT SANCHEZ: Yes.

THE COURT:              Okay.  Other than the medications that you've been
                        prescribed, are you currently under the influence of
                        any other drug or alcohol?

DEFENDANT SANCHEZ: No, ma'am.

THE COURT:              Mr. Arrambide, do you believe your clients are
                        competent to proceed here today?[4]

MR. ARRAMBIDE:          I do, your Honor.

Crim. ECF (Dkt. #44 at 3-4).  In addition, Movant affirmed that he had an opportunity to fully

review and discuss his case with Arrambide and that he was satisfied with the advice he was given.

*Id.* at 6.  Movant stated that he understood the essential elements to prove conspiracy to possess with

the intent to manufacture and distribute a mixture or substance containing a detectable amount of

methamphetamine as read by the United States Attorney.  *Id.* at 8-9.  Movant admitted that he

committed each one of the elements.  *Id.* at 9.  Movant also affirmed that he signed the Plea

Agreement, the Addendum to the Plea Agreement and the Factual Basis.  *Id.* at 9-10.  He stated

affirmatively that he reviewed each of the documents with his attorney before he signed them and

that he understood everything contained in the plea documents.  *Id.*  Movant specifically affirmed

that he waived his right to a jury trial.  *Id.* at 10-11.  Movant also stated that he understood the

minimum and maximum penalties that could be imposed in his case, not less than ten years and not

more than life imprisonment, a fine not to exceed $10 million or both imprisonment and a fine, and

---

[4] Another defendant also entered a plea of guilty at the same hearing.

supervised release of at least five years. *Id.* at 11-12. Movant affirmed that he understood that the Guideline Stipulations agreed to in the Plea Agreement were not binding on the Court, and that if the Court applied a different guideline provision, that he would still be bound by the Plea Agreement. *Id.* at 12-13. Movant affirmatively stated that no one tried to force or threaten him to plead guilty and specifically denied that promises were made to him outside the Plea Agreement to try and force him to plead guilty. *Id.* at 13. Movant acknowledged that he waived his right to appeal with two exceptions: that the sentence imposed exceeds the statutory maximum and the right to seek collateral review of ineffective assistance of counsel. *Id.* at 13-14. Movant also orally confirmed that everything in the Factual Basis was true and correct. *Id.* at 16-17. In describing his criminal conduct, Movant stated:

> DEFENDANT SANCHEZ: I just drove from Point A to Point B. I agree. With the methamphetamine in the car.
>
> THE COURT: Okay. So, you delivered it from Point A to Point B.
>
> DEFENDANT SANCHEZ: Yes.
>
> THE COURT: All right. Your Factual Basis states that – well, let me just ask you: And you did that in coordination with at least one other person?
>
> DEFENDANT SANCHEZ: Yes.
>
> THE COURT: Okay. The group that you were involved with in distributing this methamphetamine, your Plea Agreement states that that group distributed at least 45 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine or 4.5 kilograms of actual methamphetamine and that you knew or should have known that. Is that correct?
>
> DEFENDANT SANCHEZ: Yes, ma'am.

11

| | |
|---|---|
| THE COURT: | Are both counsel satisfied that there is a Factual Basis to support this plea? |
| MR. BLESSING: | Yes, your Honor. |
| MR. ARRAMBIDE: | Yes, your Honor. |
| THE COURT: | Mr. Arrambide, have you had an opportunity to fully review and discuss these cases with your clients? |
| MR. ARRAMBIDE: | I have, your Honor. |
| THE COURT: | Do you join in their decision to plead guilty? |
| MR. ARRAMBIDE: | I do, your Honor. |

*Id.* at 17-19.  Finally, after accepting Movant's plea of guilty, Magistrate Judge Priest Johnson found that Movant was competent to plead and had the assistance of counsel, that he understood his trial rights and the nature of the charges alleged against him, that he understood the minimum and maximum penalties that could be imposed, and that while the Court would refer to the guidelines in determining his sentence, they were not binding on the Court.  *Id.* at 20.  Magistrate Judge Priest Johnson found Movant's plea to be knowing and voluntary.  *Id.*

The record shows Movant's choice to plead guilty was a voluntary choice among the alternative courses of action open to him.  "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge*, 431 U.S. at 73–74). In light of the statements Movant made in open court, it cannot be concluded that Movant's plea was involuntary or unknowingly entered.

12

### B.      Investigation into Mental Competency

Movant alleges Arrambide was ineffective in failing to investigate Movant's alleged incompetency. He contends that he "clearly suffered" from a mental illness that may have affected the knowing and voluntary nature of his guilty plea. (Dkt. 1-1 at 10). Movant argues that the record at least suggests he was incompetent as he testified that he did not take his medication prior to the entry of his guilty plea. *Id.* Movant filed his medical records from Border Region Behavioral Health Center to support this issue, alleging that they show him being under a doctor's care and that he has been confined in a mental institution for a period of three years due to a failure to take his medication. (Dkt. #8). Movant contends that he is prescribed medication to help him with his mental-health problems and to "allow him to make rational decision[s] and to understand what is being told to him." (Dkt. #13 at 1). Movant states that, without his medication, he hears voices and disturbing noises that are not explainable. *Id.*

To establish prejudice, Movant must demonstrate a reasonable probability that he was incompetent, sufficient to undermine confidence in the outcome. *Bouchillon v. Collins*, 907 F.2d 589, 590, 595 (5th Cir. 1990) (applying this standard to a claim for ineffective assistance for failure to investigate the defendant's competency prior to entering his plea); *see also United States v. Avila-Gonzalez*, 757 F. App'x 353, 357 (5th Cir. 2018) (per curiam) (explaining that, to demonstrate prejudice in connection with the same claim for ineffective assistance of counsel under 28 U.S.C. § 2255, the defendant must "demonstrate a reasonable probability that the court would have found him incompetent"); *accord Hummel v. Rosemeyer*, 564 F.3d 290, 298, 303 (3rd Cir. 2009) (holding that, in a case for ineffective assistance of counsel for stipulating that the defendant was competent

to stand trial and for failing to request a court order to evaluate the defendant's competency by a psychiatrist, the defendant "must demonstrate that there is a reasonable probability he would have been found incompetent to stand trial" to prove prejudice).

The record refutes Movant's assertion of mental incompetency. Movant specifically stated that he understood the nature of the plea proceedings. Movant spoke coherently and intelligently about his involvement in the conspiracy and affirmed his intent to plead guilty, without coercion or undue influence. Contrary to Movant's assertions, a diagnosis of mental-health problems does not always render a defendant legally incompetent. *United States v. Israel*, 838 F. App'x 856, 863 (5th Cir. 2020) ("Because '[n]ot all people who have a mental problem are rendered by it legally incompetent,' Israel's schizophrenia diagnosis and attendant treatment did not necessarily render him legally incompetent at the time of his plea."). A defendant is deemed incompetent only when "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975), and citing 18 U.S.C. § 4241(a) ("The court shall grant the motion [for a hearing to determine the mental competency of the defendant], or shall order such a hearing on its own motion, if there is a reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.")). Here, Movant can show neither deficient performance nor prejudice. Nothing in the record suggests that he lacked the capacity to understand the proceedings. And nothing in the record suggests an inability to consult with counsel and participate in preparing his defense sufficient to trigger a duty

14

on counsel's part to seek an independent mental-health evaluation.  Movant has also failed to show that here is a reasonable probability that he lacked the capacity to understand the nature and object of the plea proceedings.  The record directly supports the magistrate judge's finding of competency.  Movant's claim of ineffective assistance of counsel for failure to investigate his alleged mental incompetency lacks merit.

### C.    Pre-Plea Advice

Movant also alleges that Arrambide was deficient in failing to advise Movant as to the offense he was pleading guilty to, his estimation on the guideline range, and his advice regarding the availability of a reduced sentence.  With respect to the first two claims, Movant states:

> At sentencing it became apparent that [Movant] was not adequately counseled regarding the charge he plead guilty to and the consequences thereof.  As stated above, [Movant] showed that he was led to believe that his offense was possession not conspiracy although his counsel did not explain anything to [Movant], but threaten [sic] [Movant], with 30 years if he went to trial, but if he take this plea agreement his sentence exposure will be between 11-14 years.

(Dkt. #1-1 at 8).  As outlined above, Movant was fully advised of the conspiracy charge he was pleading to at the change-of-plea hearing, the maximum statutory penalty, and that the Court was not bound by the guidelines in determining his sentence, regardless of what the parties agreed to.  Movant cannot show prejudice.  To the extent Movant relies on his behavior at sentencing in support of this claim, the record suggests that Movant's new assertions at sentencing were motivated more by his desire to protect other people involved in the conspiracy than some confusion as to what he pleaded to.  Crim. ECF (Dkt. #45 at 9-13).

Furthermore, to the extent Movant alleges that Arrambide made some unkept promise to him that he would receive 11-14 years if he pleaded guilty, the plea transcript refutes any such

assertion.  Movant specifically stated that he was pleading guilty of his own accord and that no promises were made to him outside of the plea agreement. (Dkt. #44 at 13).  *Blackledge*, 431 U.S. at 73-74 (stating that "[s]olemn declarations in open court carry a strong presumption of verity" and indicating that the representation made by the defendant at a plea hearing, as well as the findings made by the trial judge accepting the plea, constitute a formidable barrier to any subsequent collateral attacks).  Even when his claim is inconsistent with representations he made in open court, a defendant may seek habeas relief on the basis of an unkept promise by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise.  *See Blackledge*, 431 U.S. at 75 (finding the allegation of an unkept promise not vague or conclusory where the defendant indicated exactly what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication).  In *United States v. Cervantes*, the Fifth Circuit Court of Appeals elaborated on this standard, stating that a defendant is entitled to an evidentiary hearing if the defendant "produces an independent indicia of the likely merit" of the allegations, typically found in the form of one or more affidavits from reliable third parties. 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989); *United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988); *United States v. Raetzsch*, 781 F.2d 1149, 1152 (5th Cir. 1986)).  Here, Movant's claim of an unkept promise is conclusory and unsupported by any third-party affidavit. It therefore does not warrant an evidentiary hearing, much less a grant of relief.

As to Movant's claim that his plea was not knowing because he relied on Arrambide's incorrect advice regarding the availability of a reduced sentence, this claim is conclusory. *United*

*States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (stating that "conclusional allegations" and general claims are insufficient to establish ineffective assistance or to require an evidentiary hearing on that issue); *see also United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." (quoting *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998)). Movant offers no specifics as to what Arrambide allegedly advised him regarding a sentence reduction. Regardless, the plea transcript outlined above refutes this assertion, as Movant affirmed that no promises were made to him outside the plea agreement that would have induced him to plead guilty. Movant's claims of ineffective assistance of counsel as to Arrambide are refuted by the record, lack merit, and are denied.

### D.    Debriefing

Movant contends that O'Shea was deficient in advising him regarding the availability of a reduced sentence with respect to debriefing. Movant states:

> Based on Counsel's O'Shea misadvised [sic] [Movant], in regards to the issue of debriefing. [Movant] was advised that in order to meet the requirements of 5k1 or rule 35 debriefing which was in fact not true as stated and made evidence [sic] by the Government (see Sent. Tr. P.7 L.1-11, 2025). Due to [Movant's] incorrect understanding of the debriefing requirement he refused out of fear for the safety and welfare of his family. This decision by [Movant], resulted in him being disqualified for the safety valve application under the First Step Act which in turn affected his sentence.

(Dkt. #1-1 at 9). However, assuming without finding that counsel was somehow deficient in this regard, the record establishes that Movant cannot show prejudice as he testified at sentencing that it was his intention to never debrief. Crim. ECF (Dkt. #45 at 10). This statement is consistent with Movant's attempt at sentencing to argue that he did not engage in a conspiracy out of fear of

17

retribution.  This claim of ineffective assistance of counsel is denied as Movant cannot show prejudice.

### E.  Competency at Sentencing

Movant goes on to contend that O'Shea was also ineffective in failing to offer mitigating evidence regarding his mental-health history and in failing to request a mental-competency evaluation before sentencing.  First, Movant does not state with any specificity what mitigating evidence should have been offered and how it would have changed the proceedings.  Movant does not support this claim with any evidence.  As a result, this claim is conclusory and is denied.  *Demik*, 489 F.3d at 646; *Holmes*, 406 F.3d at 361.  To the extent Movant asserts that the medical records he now provides should have been offered as mitigating evidence, Movant cannot show prejudice.  The trial court was aware of Movant's mental-health history as testified to at the change of plea hearing. As a result, Movant has failed to show that there is a reasonable probability that the Court would have imposed a lesser sentence with this additional evidence.  As to Movant's claim that O'Shea was also ineffective in failing to request a mental-competency evaluation before sentencing, the record establishes that counsel was not ineffective as there was no basis in the record to make such a request.  Magistrate Judge Priest Johnson found Movant competent to change his plea.  There is nothing in the record substantiating Movant's after-the-fact assertion of incompetency.  For the same reason, Movant cannot show prejudice and this claim is denied as lacking in merit.

### F.  *Anders* Brief

Finally, Movant that argues O'Shea was ineffective for filing an *Anders* Brief with the Fifth Circuit Court of Appeals in lieu of filing an appeal challenging Movant's competency during the plea

proceedings.  Because there is no right to appellate counsel in the absence of a non-frivolous issue for appeal, Movant must demonstrate deficient performance by showing that O'Shea "was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Smith v. Robbins*, 428 U.S. 259, 284 (2000).  Movant must also show actual prejudice by demonstrating a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal." *Id.*  Here, Movant has failed to demonstrate ineffective assistance and prejudice.  Movant does not identify any non-frivolous issues.  More importantly, the Fifth Circuit Court of Appeals in reviewing Movant's response to the *Anders* brief found there were no non-frivolous issues to appeal and dismissed the appeal as frivolous.  Crim. ECF (Dkt. #49); *Newsome v. United States*, No. 3:13-CV-4954, 2015 WL 695595, at *8 (N.D. Tex. Feb. 17, 2015) (finding that appellate counsel was not ineffective for filing an *Anders* brief when the movant failed to identify any non-frivolous claims).  This claim is denied.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(B).  Although Movant has not yet filed a notice of appeal, this Court, nonetheless, addresses whether Movant would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues

the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*;  *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).  When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a [certificate of appealability] should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

In this case, reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor could they find that the issues presented are adequate to deserve encouragement to proceed.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, Movant is not entitled to a certificate of appealability.

## V.  CONCLUSION AND ORDER

In sum, the record reflects that Movant's plea was knowing and voluntary.  Movant's claims of ineffective assistance of counsel lack merit.  It is therefore **ORDERED** that the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.  A certificate of

appealability is **DENIED**.  It is further **ORDERED** all motions by either party not previously ruled on are **DENIED**.

   **SIGNED this 23rd day of September, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE